In re Otis Jay HILL, Jr., Debtor.

In re Terry Lee STILSON, Connie Louise Stilson, Debtors.

In re Kendrick Arthur JANNELLE a/k/a Kendrick A. Jannelle, Thelda Maxine Jannelle a/k/a Thelda M. Jannelle, Debtors.

In re Virginia Claire JEWELL a/k/a Virginia Claire Martindale, Debtor.

Bankruptcy Nos. 80–40048, 80–40077, 80–40056 and 80–40197.

United States Bankruptcy Court, D. Kansas.

June 20, 1980.

---

Jan M. Hamilton, Topeka, Kan., for Otis J. Hill.

Roger L. Hiatt, Topeka, Kan., for Terry Lee and Connie Louise Stilson.

Paul D. Post, Topeka, Kan., for Kendrick Arthur and Thelda Maxine Jannelle.

David L. Skidgel, Topeka, Kan., for Virginia Claire Jewell.

### MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

The above cases filed under Chapter 13 have been joined for the purpose of this decision. Each case has as its sole issue the propriety of classification of unsecured claims.

The question of propriety of classification of unsecured claims arose in each case at the confirmation hearing. The Court, in making the requisite findings pursuant to § 1325 of Title 11 United States Code, made inquiry of the justification for the various classifications appearing in the plans before it. The debtors responded variously and were each given an opportunity to brief the issue. It is now ready for decision

### FINDINGS OF FACT

*HILL:*

Otis J. Hill filed a Chapter 13 plan on January 18, 1980. The plan provided for full payment to secured creditors to the extent of the value of collateral held. The liens of all the secured creditors were subsequently voided pursuant to § 522(f) of Title 11 U.S.C. Unsecured creditors were divided into three classes. The first two classes contained one creditor each and were to be paid in full. One creditor, Roy Nafzger, is to be paid because he purportedly holds a claim which may be nondischargeable pursuant to § 523(a)(2)(4) or (6) and which could subject the debtor to criminal prosecution for fraud. Another creditor, Dr. Nelson, is a psychiatrist from whom the debtor is presently undergoing treatment. The debtor wishes to pay the good doctor for fear that failure to do so would result in cessation of treatment. The third class of unsecured creditors, containing a dentist, a bank, a finance company, department stores and other individuals, is to be paid nothing.

Mr. Hill's listed gross income is $1,600 per month. His listed net income is $1,000 per month. Total debt listed is $7,900. He intends to pay creditors approximately $3,900 plus administrative expenses at $197.76 per month. The plan will be completed in approximately two years.

*STILSON:*

The Stilsons filed a Chapter 13 on February 1, 1980. The plan provides for full payment to secured creditors to the value of their security which is approximately $9,900. The unsecured creditors were divided into two classes. The first class, originally containing a number of physicians at the Topeka Medical Center, was to be paid in full. The second class, containing all other creditors, including other physicians as well as hospitals, clinics, department stores, etc., was to be paid nothing. An amendment deleted all but one physician at the Topeka Medical Center from that class to receive full payment reducing unsecured debt to be paid to approximately $800.

The Stilsons' reported combined earnings are approximately $30,000 annually with a monthly reported net of $1,580. Total debt is reported at $22,655. The debtors intend to pay $10,700 plus administrative expenses and fees through the plan at $350 per month. The plan will be completed in slightly less than three years.

Again the reason stated for preferring a physician over other creditors including other physicians is that the debtors fear they will not be treated in the future should they not now pay the good doctor.

*JANNELLE:*

The Jannelle's Chapter 13 plan was filed on January 22, 1980. The plan originally provided for full payment to secured creditors to the value of their security. There are now no secured creditors as property was either returned to them or their liens avoided pursuant to § 522(f). Unsecured claims are divided into two classes. The first class consists of all doctors, hospitals and related services and provides for full

payment. The second class consists of all other creditors, including an attorney, which class was to be paid nothing. The plan has subsequently been amended and now provides payment of 70% to this class of creditors.

The Jannelle's combined income is approximately $14,600 annually with a reported monthly net of $900. Total debt is reported at approximately $11,600. The debtors intend to pay approximately $8,000 plus administrative expenses and fees through the plan at $200 per month. The plan will be completed in approximately 46 months. Again the stated reason for preferring medically related creditors is to insure continued treatment if and when needed.

*JEWELL:*

Virginia Claire Jewell filed a Chapter 13 plan on March 19, 1980. The plan provides for full payment to secured creditors to the extent of collateral value which is approximately $950. The plan divides unsecured creditors into three classes. The first class is comprised of attorneys. The second class contains only doctors and hospitals. These two classes are to be paid 25% of their claims. The third class is made up of all other unsecured creditors and is to be paid nothing.

Virginia Claire Jewell has two teenage children, earns a gross of $621 per month and a net $550 per month plus child support of $130 per month. The plan reports debt of approximately $2,000; $950 is to be paid secured creditors, approximately one-quarter of $800 to be paid unsecured creditors and the remaining $950 to be forgiven. The plan calls for payment of $57.21 per month and will take approximately 2½ years.

## CONCLUSIONS OF LAW

The provisions of Title 11 U.S.C. applicable to this decision are found at Sections 1122, 1322 and 1325.

Section 1325(a)(1) provides:

*(a) The court shall confirm a plan if—*

*(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title; . . .*

Section 1322 in pertinent part provides:

*(a) the plan shall—*

*(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.*

*(b) Subject to subsections (a) and (c) of this section, the plan may—*

*(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; .   .   .*

Section 1122 provides:

*(a) except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.*

*(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.*

From the foregoing a number of conclusions have been drawn. (1) The Court must make certain findings. If the file before the Court discloses possible noncompliance with applicable sections of Title 11 U.S.C. the Court must make inquiry. (2) Creditors within a specified class must be treated equally. (3) To allow classification is to discriminate; however, so long as that discrimination has as its basis separation of dissimilar claims or interests it is not to be considered unfair. (4) The larger class, unsecured creditors, may be divided into smaller sub-classes, each of which must contain claims similar to one another and dissimilar from other classes.

Though the drawing of these conclusions may be self-evident the application of these conclusions to factual circumstances existing in each individual Chapter 13 plan is not. Thus far, decisions have run the gamut of everything goes to nothing is allowed. In the case of *In re Sutherland*, 3 B.R. 420

(Bkrtcy.D.C.) it is stated that if a creditor receives that which it would receive in a Chapter 7 proceeding no discrimination in a Chapter 13 can take place even though some creditors may receive more than others. It was postulated in that case that should the debtor wish to favor only creditors with redheaded secretaries that may be a proper method of classification. That, of course, may be a correct posture but it is one which this Court is unwilling to adopt. Using that holding as a basis, as each of us is unique, it can be postulated that a separate classification could be given to each creditor and each receive a distribution differing from all others. Such a result would wreak administrative havoc as well as allow classification by mere whim and possibly be violative of § 1122(a). On the other hand, cases such as *In re Iacovoni*, 2 B.R. 256 (Bkrtcy.D.C.) have merely disallowed classification, except for that specifically and actually set out in § 1122(b) and § 1322(b)(5). These cases would seem to gain sustenance from an article by Hon. Joe Lee, *Chapter 13, nee Chapter XIII*, Vol. 53, Am.Bankr.L.J., Fall, 1979, at pg. 313. This too may be the correct posture; however, again it is one not adopted by this Court. Though soundly based on such cases as *Brockett v. Winkle Terra Cotta Co.*, 81 F.2d 949 (8th Cir. 1936) wherein claims of minimal monetary amount may be classified for administrative convenience, it seems that these cases restrict the debtor's classification choices to § 1122(b) and § 1322(b)(5) while barring use of § 1122(a) and § 1322(b)(1). Either of the alternatives is definitive and possibly more easily discernible than the course to be suggested herein.

The Court concludes that somewhere between total whim and an Act of God lies the answer to what justification is needed to hew out a particular class of unsecured creditors and distinguish it from other unsecured creditors. Such classification should be based upon guidelines flexible and practical enough to be adapted to the circumstances of every case yet definitive enough to provide assistance to debtors and their attorneys when formulating a plan. The Court hopes that the following contributes to the evolution of such guidelines.

■ The Court is of the opinion that the comment found in 5 *Collier on Bankruptcy*, 15th Ed. § 1122.03 at 1122–4 is inapplicable to Chapter 13. That comment states that the phrase "substantially similar" must be construed to mean similar in legal character and thus the nature of the claim or interest is determinative of classification and not the nature or identity of the holder of the claim or interest. The Code at Sections 1322 and 1122(a) as well as 5 *Collier on Bankruptcy*, 15th Ed. § 1322.01 at 1322–7 leaves the impression that the permissive ability in the debtor to designate classes among his unsecured creditors is there not as mere decoration but to be used. The *Collier* comment, *supra*, at 1322–7 states:

> *Unfair discrimination against a class of claims would therefore seem to have reference either to the order of distribution or the percentage to be paid the particular class. If courts were to construe as unfair discrimination a proposal to pay a particular class of claims a greater percentage than some other class, section 1322(b)(1) would be deprived of most of its meaning.*

The comment further states that designation of classes of unsecured claims restricted by substantial similarity of claims is permitted by section 1322(b)(1). The two mentioned *Collier* sections seem either to be diametrically opposed or to recognize that interpretations applicable for individuals in Chapter 13 plans may not be the same as those given for reorganizations in Chapter 11 and vice versa. It is this latter alternative that this Court believes is meant by the diverse *Collier* comments. Reliance on definitions in and interpretation of Section 1122 and its forerunner cases is of little help in the classification problems confronting courts in Chapter 13. The definitions and interpretations given are clearly tailored for either Chapter XI or 11, i. e. separate treatment of various types of stockholders, mortgage holders, etc. cf. *Brockett v. Winkle Terra Cotta Co., supra.* Reorganization cases and situations have little or no meaning in the Chapter 13 individual repayment

plan context. If claims means unsecured creditors and interest means various interests in realty or various forms of stockholder equity as indicated by commentators, the ability apparently given to classify unsecured claims by § 1322 is totally meaningless. These definitions are peculiar to Chapter 11 and should remain there. The recent cases of *In re McKenzie*, 88 B.R. 4, 6 BCD 19 and *In re Blevins*, 1 B.R. 442 (Bkrtcy.D.C.), though not allowing classification of the unsecured claims under consideration would seem to recognize the principle that classification of unsecured claims is allowed.

■ This Court, though in some instances prohibited by statute from recognition of reality, is not so constrained in this situation. In many instances a Chapter 13 debtor desires to specially classify creditors who also have codebtors obligated as well as the debtor. In most instances courts are reluctant or have not allowed such a classification. This Court opines that such obligations may be separately classified. The creditor has separated itself from all other creditors by obtaining as security the signature of not only the Chapter 13 debtor but of another presumably solvent party. The creditor, regardless of the Chapter 13 debtor's discharge, presumably will be paid by the codebtor. No other creditor has this ability and thus no other creditor is similar to the creditor who has a cosigned debt as their debts are totally extinguished whereas his is not. The debtor discriminated among creditors at the inception of the debt by giving one or more creditors the additional security of a cosigner. Any discrimination occurring was brought about by the relationship of the parties at the inception of the debt. It is no more unfair now than then and no more unfair than distinguishing secured from unsecured creditors. Additionally, in denying such classification, the Court would ignore practicality in that the debtor while under the plan or thereafter, if he truly wishes to pay the obligation under the plan and is prohibited, will likely make a voluntary payment.

■ Another for instance of practicality pertains to physicians and other licensed practitioners providing medical or dental services. Debtors fear loss of these services particularly when they are attended by a professional person they trust or where alternative services may not be readily available such as in some cities and particularly in rural areas. Whether or not these fears are well founded and some probably are, is it realistic to believe that denial of classification will result in nonpayment? Is a separate classification for licensed practitioners of the healing arts improper? Certainly by education and occupation they are similar within the group and dissimilar to retail merchants and others in the consumer finance area, utility companies, lawyers and the myriad of other types of creditors any debtor may have. It is this Court's opinion that classifications may be fairly drawn which place medical doctors, dentists and other licensed practitioners of the healing arts into one class. Among other possible classes may be lawyers, hospitals and other medical service oriented individuals and institutions and retail merchants and finance companies, etc. Each class must contain similar types of claimants who can be distinguished from members of other classes. By allowing such classification reality is recognized, control of expenditures of the debtor is strengthened and continuation of services necessary to the debtor's well being is assisted.

Consistent with the above, the Court makes the following specific conclusions.

*HILL :*

■ The Court concludes that Mr. Hill's plan cannot be confirmed. Dr. J. G. Nossaman is scheduled to receive no payment whereas Dr. James N. Nelson is scheduled to be paid in full. Both creditors are members of the same general class and are not being treated equally. Roy Nafzger is scheduled to be paid in full and is an unsecured creditor. Other unsecured creditors are to be paid nothing. It is stated by the debtor that the debt owed to Nafzger may be nondischargeable. Until some evidence of this is presented or a binding ad-

mission is made the Court finds there to be insufficient justification for such a classification.

*STILSON*:

The Court concludes that the Stilson's plan does not treat all members of a class, i. e. Medical Doctors, Doctors of Osteopathy and Doctors of Dental Science, equally but discriminates unfairly among them by attempting to cast some from the class. The plan in its present form may not be confirmed.

*JANNELLE*:

■ The Court concludes that though the Jannelle's plan groups into one classification physicians as well as hospitals and other medical service oriented individuals or institutions, which this Court believes should constitute two classifications, since they are to be paid the same amount and are classifiable the plan may be confirmed if all other criteria are met.

*JEWELL*:

■ The Court concludes that the Jewell's plan properly classifies three of its four classes of creditors, i. e. secured creditors, attorneys and miscellaneous. The fourth class of creditors, doctors and hospitals, combines two classifications but since they are to be paid the same amount and are classifiable, no adverse effect occurs thus the plan may be confirmed assuming all other criteria are met.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.