**In re Larry Elisha GIBSON and Patricia Dianne Gibson, Debtors.**

Bankruptcy No. 82–04863A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 24, 1985.

Gary M. Shapiro, Macey & Sikes, Atlanta, Ga., for GHEAC.

Harry W. Krumenauer, Marietta, Ga., for debtors.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the objection filed by the Georgia Higher Education Assistance Corporation ("GHEAC") to the Estate Administrator's Report and Recommendation concerning the good faith of the above-named debtors. Following a hearing on September 12, 1984, this matter was taken under advisement.

The procedural background of this case is as follows: The debtors filed their joint Chapter 13 petition on October 14, 1982.

The original plan called for monthly payments in the amount of $150.00 to the Chapter 13 Trustee for a duration of sixty (60) months. Timely objections to confirmation were filed by Fleet Finance, Inc. of Georgia, f/k/a Southern Discount Company of Georgia ("Fleet Finance"), and GHEAC. Thereafter, the debtors modified their plan to pay $100.00 per month for thirty-six (36) months. The evidentiary hearing before the Estate Administrator was held on August 1, 1983. An objection to confirmation was filed by the First National Bank of Gainesville ("First National") on February 7, 1984. The Estate Administrator issued her Report and Recommendation on March 1, 1984. Timely objections to the Estate Administrator's Report and Recommendation were filed by Fleet Finance and GHEAC. First National withdrew its objection to confirmation on April 17, 1984. On April 25, 1984, the debtors filed an amended plan increasing their monthly payments to $125.00 for a period of sixty (60) months. A hearing on the objections to the Estate Administrator's Report and Recommendation was held before this Court on September 12, 1984.

The Estate Administrator found that the debtors acted in good faith in filing their Chapter 13 plan, and the Estate Administrator recommended that the plan be confirmed upon the filing of an amendment to increase the amount of payments or length of the plan to enable obligations owing to secured creditors to be satisfied. Fleet Finance settled its differences with the debtors out of court and did not appear at the September 12, 1984 hearing. Therefore, the Court's ruling is based entirely upon GHEAC's continuing objection to the debtors' good faith.

GHEAC is the holder of a claim in the amount of $14,995.07 based upon student loans made to Dr. Gibson to finance his education in chiropractics. The plan under consideration is a 6% composition plan. GHEAC's objections may be grouped into three categories: (1) The debtors propose to make only nominal repayments on the student loan, a debt which would be presumptively nondischargeable under Chapter 7; (2) The debtors gave preferential treatment to certain unsecured creditors; and (3) The plan is not feasible, as the debtors' schedules allegedly reflect an inadequate monthly income from which to make the $125.00 payment to the Chapter 13 Trustee.

## FINDINGS OF FACT

1. As of the date of the hearing before the Court, Dr. Gibson was self-employed as a chiropractor in Macon, Georgia with a monthly net income approximating $900.00. His wife was earning a monthly net income of $550.00 as a secretary.

2. The debtors' approximate monthly expenses total $1,275.00.

3. The debtors' attorney disclosed that he is to receive $600.00 for services rendered or to be rendered in this Chapter 13 case. The sum of $300.00 has already been paid to the attorney.

4. The plan presently under consideration has a stated duration of sixty (60) months.

5. The Estate Administrator found that the debtors filed their Chapter 13 petition because Dr. Gibson had been unable to establish a profitable chiropractic practice. The Estate Administrator stated as follows:

> [Dr. Gibson] first began practice in Gainesville, Georgia, in 1981. He had a sizable initial capital outlay for equipment and he expended considerable sums on advertising in order to attract patients in a highly competitive market. He testified that he treated a number of patients without charge, in effect "giving away" his professional services. [Dr. Gibson] was never able to attract a sufficiently large patient base to make the Gainesville practice successful and closed the practice after a year, in June of 1982. He sold some equipment which was subject to a security interest, without notifying the secured creditors, and used the money to pay current obligations and to begin practice in Marietta. This practice was also unsuccessful and was aban-

doned after only two months, in September, 1982. In October, 1982 the Gibsons filed their Chapter 13 petition. The following month they moved to Macon, Georgia where [Dr. Gibson] was associated in practice with another chiropractor. They subsequently parted over unexplained "professional differences," however, and [Dr. Gibson] is now in practice by himself in Macon.

The Court adopts these findings. Therefore, a principal motivation for seeking relief under Chapter 13 was the necessity to deal with expenses accrued in Dr. Gibson's unsuccessful ventures. Another concern was the possibility that one of the secured creditors might bring a criminal action against Dr. Gibson for disposing of encumbered property. Finally, the prospect of discharging nearly $15,000.00 in student loans necessarily had some bearing on the debtors' decision.

6. The debtors have proposed to pay $125.00 per month to the Chapter 13 Trustee, leaving the debtors with a monthly surplus of $50.00 after subtracting monthly expenses and the Chapter 13 payment from monthly net income. Both debtors are working to contribute toward the plan and family needs.

7. Dr. Gibson's chiropractic degree represents a potentially valuable income-producing asset. However, his experience demonstrates the degree of difficulty in establishing a profitable chiropractic practice. For the time being, Dr. Gibson's income is subject to fluctuation. Mrs. Gibson's earnings appear to be stable.

8. The only special circumstance in this case is Dr. Gibson's unfulfilled expectation that he would be able to quickly cultivate a lucrative practice.

9. Dr. Gibson received a discharge under the prior Bankruptcy Act in 1971.

10. The debtors contracted their debts in good faith, albeit on misplaced assumptions. After Dr. Gibson ran into financial difficulty, he sold certain equipment which was subject to valid security interests. These incidents are described more fully below.

11. The plan does not place an undue burden on the Chapter 13 Trustee.

12. The debtors have no assets for distribution in a case under Chapter 7.

13. The Estate Administrator found that there were only two secured creditors: Gainesville National Bank ($2,215.00) and Fleet Finance ($1,590.00). However, the debtors reached a compromise with First National after the Estate Administrator prepared her Report and Recommendation, whereby the $4,814.72 component of First National's claim would be treated as secured to the extent of $2,000.00. The Chapter 13 Trustee previously deemed this claim unsecured, as First National's collateral, an X-ray processor, was sold by Dr. Gibson prior to the bankruptcy without the knowledge or consent of First National.

14. The Estate Administrator found that allowed, unsecured claims totaled $31,971.34. Due to the compromise with First National, $2,814.72 must be subtracted from this figure, yielding a total of $29,156.62 unsecured indebtedness to be paid under the Chapter 13 plan.

15. GHEAC's unsecured claim for $14,995.07 represents 51% of the Gibsons' unsecured indebtedness. The original obligation called for repayment over ten years at a rate of $145.00 per month.

16. The claim held by Fleet Finance in the amount of $1,590.00 is secured by a lien on the debtors' household goods and furnishings. This lien would be avoidable under Bankruptcy Code § 522(f). However, the debtors have apparently agreed with Fleet Finance to refrain from filing a lien avoidance action to enable Fleet Finance to be treated as a secured creditor.

17. The debtors originally scheduled a secured debt in the amount of $31,030.64 owing to the Citizens Bank of Gainesville ("Citizens Bank"). This debt was secured by real property pledged by Dr. Gibson's mother and certain office equipment owned by Dr. Gibson. The office equipment was sold prior to bankruptcy without the knowledge or consent of Citizens Bank. This

obligation was subsequently assumed entirely by Dr. Gibson's mother, and the debtors are no longer liable to the Citizens Bank.

## DISCUSSION

### A. GOOD FAITH AND THE DISCHARGE OF STUDENT LOANS

■ The question of a Chapter 13 debtor's good faith is to be decided on a case-by-case basis. *In re Kitchens*, 702 F.2d 885 (11th Cir.1983); *In re Steele*, 34 B.R. 172, 173 (Bkrtcy.M.D.Ala.1983); *In re Weiss*, 34 B.R. 346, 348 (Bkrtcy.E.D.Pa. 1983). The Court should look at all facts and circumstances. *In re Kitchens, supra; In re Rimgale*, 669 F.2d 426 (7th Cir.1982); *In the Matter of Ponteri*, 31 B.R. 859, 862 (Bkrtcy.D.N.J.1983). The burden of proving good faith is on the debtor. *In re Smith*, 39 B.R. 57, 58 (Bkrtcy.S.D.Fla. 1984); *In re Sullivan*, 40 B.R. 914, 915 (Bkrtcy.E.D.N.Y.1984); *In the Matter of Ponteri*, 31 B.R. at 863; *In re Elkind*, 11 B.R. 473, 476 (Bkrtcy.D.Colo.1981). The fact that the debtor proposes to discharge a debt that would be nondischargeable in a Chapter 7 case under Bankruptcy Code § 523(a) is not sufficient, standing alone, to find that the Chapter 13 plan was filed in bad faith. *In re Vensel*, 39 B.R. 866, 868 (Bkrtcy.E.D.Va.1984); *In the Matter of Lambert*, 10 B.R. 223, 225 (Bkrtcy.E.D.N. Y.1981).

The leading authority for this Court on the issue of good faith is the decision by the Eleventh Circuit Court of Appeals in *In re Kitchens*, 702 F.2d 885 (11th Cir.1983). The Eleventh Circuit set forth eleven factors: (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; and (11) the burden which the plan's administration would place on the trustee. *Id.* at 888–889. Two other considerations raised by the Eleventh Circuit are: first, the substantiality of the repayment to unsecured creditors; and secondly, the type of debt be discharged and whether such debt would be nondischargeable under Chapter 7. *Id.* at 889.

In the case *sub judice*, the debtors seek to discharge nearly $15,000.00 in student loans upon the completion of a 6% composition plan. Bankruptcy Code § 523(a)(8) renders student loans presumptively nondischargeable in a Chapter 7 case. 11 U.S.C. §§ 523(a)(8), 727(b); *see Johnson v. Edinboro State College*, 728 F.2d 163 (3rd Cir.1984); *In re Shore*, 31 B.R. 578 (M.D. Ga.1982). However, the discharge provision of Chapter 13, Bankruptcy Code § 1328(a), is not subject to Bankruptcy Code § 523(a)(8). 11 U.S.C. § 1328(a). Rather, the only debts excepted from a discharge under Bankruptcy Code § 1328(a)(8) are long-term debts provided for under Bankruptcy Code § 1322(b)(5) and obligations for alimony, maintenance and support as specified in Bankruptcy Code § 523(a)(5). *Id.* As such, a discharge under Chapter 13 is broader than a Chapter 7 discharge. *In the Matter of Lambert*, 10 B.R. 223, 225 (Bkrtcy.E.D.N.Y.1981) (citing *In re Terry*, 630 F.2d 634, 6 BCD 974 (8th Cir.1980); *In re Fluharty*, 7 B.R. 677, 6 BCD 1417 (Bkrtcy.N.D.Ohio 1980); *In re Walsey*, 7 B.R. 779, 6 BCD 1410 (Bkrtcy.N. D.Ga.1980); *In re Marlow*, 3 B.R. 305, 6 BCD 77 (Bkrtcy.N.D.Ill.1980); S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) 142–43; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 430, U.S.Code Cong. & Admin.News 1978, 5787, 5928, 6385; 5 *Collier on Bankruptcy* ¶ 1328.01[1] (15th ed. 1979); Lee, *Chapter 13 Nee Chapter XIII*, 53 Am. Bankr.L.J. 303 (1979)).

Arguably, the plain meaning of the statute authorizes the discharge of student loans in Chapter 13 cases. *See In the Matter of Lambert,* 10 B.R. at 226. An overriding policy behind federal bankruptcy legislation has been to liberally construe the right to receive a discharge so that the honest but unfortunate debtor may obtain a fresh start in life. *Id.* (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 244–245, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Balanced against the policy to accord the debtor a fresh start is the well-grounded policy underlying Bankruptcy Code § 523(a)(8) to limit the dischargeability of student loans.

■ The Court's mechanism to resolve these incongruous policies is to examine the facts and circumstances of the case at hand under the numerous *Kitchens* factors of good faith. Indeed, the Court should not infer a lack of good faith where the debtors have attempted to discharge a debt whose discharge is clearly permitted by the statute. *In the Matter of Lambert,* 10 B.R. at 226. Therefore, the existence of a student loan to be composed through a Chapter 13 plan is but one consideration. *In re Kitchens,* 702 F.2d at 889.

This Court has previously confirmed the composition of a student loan at 1%. *In re Reese,* 38 B.R. 681 (Bkrtcy.N.D.Ga.1984). However, this Court was not so permissive in *In re Akpan T. Nkanang,* 44 B.R. 955 (Bkrtcy.N.D.Ga.1984). In *Nkanang,* this Court found that the debtor did not demonstrate good faith in that there was no showing made by the debtor that he sincerely wished to repay his unsecured creditors, including a creditor owed $3,977.01 for a student loan. The debtor's 1% composition plan was almost entirely directed at refinancing the debtor's expensive automobile.

The instant proceeding poses a more difficult factual scenario. On the one hand, Dr. Gibson's indebtedness for student loans totals $14,995.07. Yet, the discharge of these student loans was clearly not the debtors' sole purpose for filing for relief under Chapter 13. The debtors have settled in Macon, where both are working, and Dr. Gibson is operating with a much lower overhead. Although Dr. Gibson's expenditures in previously attempting to set up a practice in chiropractics may be viewed, in retrospect, as extravagant, the debtors' expenditures were not personally self-indulgent. The debtors have a need for relief under the Bankruptcy Code, and Chapter 13 will permit unsecured creditors to receive a fraction of their claims which they would not receive in a Chapter 7 liquidation.[1] The Court is predisposed to find that the debtors acted in good faith, unless other factors tilt the balance in favor of the creditors.

GHEAC argues that the fact that Dr. Gibson sold encumbered property without the consent of the secured party is a badge of bad faith. The Court agrees that such conduct reflects negatively upon the debtors with respect to their bona fides in dealing with creditors. However, neither of the creditors whose collateral was sold out of trust is presently opposing confirmation.[2] Yet, the Court takes issue with the purported settlement between the debtors and First National. Therefore, the Court will permit GHEAC and First National to submit briefs on the significance under *Kitchens* that the Court should attribute to Dr. Gibson's conduct in disposing of encumbered property. Similarly, the parties may brief the implications of the debtors' failure to take action to avoid the lien held by Fleet Finance in the debtors' household goods and furnishings.

---

1. Of course, GHEAC would be advantaged under Chapter 7. Although the debtors currently have no assets for distribution in a Chapter 7 case, GHEAC's debt would be presumptively nondischargeable.

2. As stated above, First National's claim was settled with the debtors by allowing First Na-

tional's claim as secured to the extent of $2,000.00. The obligation to Citizens Bank, which was secured by office equipment, as well as by real estate pledged by Dr. Gibson's mother, has been entirely assumed by Dr. Gibson's mother.

■ The Court notes, in temporarily concluding this discussion of good faith, that the test for good faith developed in the case law lends itself to a liberal construction. Considering all the facts and circumstances of this case, including the discharge of student loans and the taint on Dr. Gibson caused by his sale of encumbered property, the Court cannot say *at this time* that a Chapter 13 discharge under the plan would constitute "an abuse of the provisions, purposes or spirit of [Chapter 13]." *In re Kitchens,* 702 F.2d at 888. *See also Flygare v. Boulden,* 709 F.2d 1344, 1347 (10th Cir.1983); *In re Estus,* 695 F.2d 311, 316–317 (8th Cir.1982); *In re San Miguel,* 40 B.R. 481, 484 (Bkrtcy.D.Colo. 1984); *In the Matter of Stein,* 36 B.R. 521, 523 (Bkrtcy.M.D.Fla.1983). GHEAC and First National shall be given an opportunity to present authority and argument that the debtors have not met their burden when Dr. Gibson's conduct is fully considered in conjunction with the other material factors.

## B. PREFERRED TREATMENT OF FIRST NATIONAL'S UNSECURED CLAIM

GHEAC argues that the debtors' consent to the allowance of First National's claim as secured to the extent of $2,000.00 constitutes unfair discrimination among unsecured creditors. Bankruptcy Code § 1322(a)(3) states as follows:

(a) The plan shall—

&ast; &ast; &ast; &ast; &ast; &ast;

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a)(3). Bankruptcy Code § 1322(b)(1) adds that a plan may "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not *discriminate unfairly* against any class so designated." 11 U.S.C. § 1322(b)(1) (emphasis added). There is no dispute that the $4,814.72 component of First National's claim is technically unsecured, inasmuch as Dr. Gibson sold the X-ray processor which secured that obligation prior to bankruptcy for $2,000.00.

■ Four factors should be considered by the Court in assessing whether a classification is unfairly discriminatory: (1) whether the discrimination has a reasonable basis; (2) whether the classification is necessary to the debtor's rehabilitation under Chapter 13; (3) whether the discrimination is proposed in good faith; and (4) the treatment of the class discriminated against. *In re Wolff,* 22 B.R. 510, 6 CBC 2d 1282, 1284 (Bankruptcy App. Panel 9th Cir.1982); *In re Cook,* 7 CBC 2d 1079, 1082 (D.N.M.1982); *In re Moore,* 31 B.R. 12, 17 (Bkrtcy.D.S.C.1983). The debtor has the burden of proving that the classification of unsecured claims does not unfairly discriminate. *Id.*

Courts have upheld the separate classification of unsecured obligations which would be nondischargeable under Chapter 13; such nondischargeable, unsecured debts may be paid in full while other unsecured claims are ratably composed. *In re Sanders,* 13 B.R. 320 (Bkrtcy.D.Kan.1981) (claim for unexplained loss of assets under § 14c(7) of the Bankruptcy Act); *In re Haag,* 3 B.R. 649 (Bkrtcy.D.Ore.1980) (child support arrearages); *In re Curtis,* 2 B.R. 43 (Bkrtcy.W.D.Mo.1979) (child support arrearages). Physicians, dentists, and other licensed practitioners may be separately classified and receive a higher percentage payment on their unsecured claims. *In re Hill,* 4 B.R. 694 (Bkrtcy.D.Kan.1980). Substantial discrimination for the purpose of avoiding criminal prosecution was found to be without a reasonable basis in *In re Gay,* 3 B.R. 336 (Bkrtcy.D.Colo.1980).

■ First National's claim would clearly be dischargeable under Bankruptcy Code § 1328(a), even though there might be some question as to the dischargeability of the claim in a Chapter 7 case pursuant to Bankruptcy Code § 523(a)(8). The $2,000.00 secured claim reduces the ratable distribution to other unsecured claims from 12% to 6%, and there is no indication that the allowance of First National's claim as partially secured is necessary to the debt-

ors' ability to reorganize under Chapter 13. The debtors' consent to allow First National's claim as partially secured has precisely the same effect as creating a dual classification of unsecured claims. Accordingly, the Court hereby vacates the Consent Order of February 28, 1984 which purports to accord First National such preferential treatment.

The Court finds no reasonable basis for enabling First National to receive a higher percentage payment on its unsecured claim that other unsecured creditors will receive. Therefore, the plan cannot be confirmed as proposed. *See In re Gunn,* 37 B.R. 432 (Bkrtcy.D.Ore.1984).

## C. THE FEASIBILITY OF THE PLAN

GHEAC argues that the plan is not feasible because the debtors allegedly do not have enough income to fund the plan. GHEAC's final argument is based on outdated information. Ms. Gibson's increase in monthly pay from $480.00 to $550.00 raised the debtors' combined monthly net income to $1,450.00. As monthly expenses are $1,275.00, the debtors have a monthly excess of $175.00 with which to make their $125.00 monthly payment to the Chapter 13 Trustee.

## CONCLUSIONS OF LAW

Based on the foregoing, the Court hereby denies confirmation pending a modification in the debtors' plan to show that the Court has vacated the February 28, 1984 Consent Order and that First National's claim is entirely unsecured. The debtors shall have thirty (30) days from the entry of this Order in which to make such modification. During that same time period, GHEAC and First National shall be permitted to file briefs regarding the weight the Court should give to Dr. Gibson's sale of encumbered property and the debtors' failure to avoid Fleet Finance's lien. The debtors shall be given not less than ten (10) days to respond to any such briefs. The Court will enter its final ruling on the question of good faith without further hearings. Should the debtors fail to file the required modification within the thirty-day time period, this case will stand dismissed and shall proceed to be closed.

IT IS SO ORDERED.