**In re Richard Eugene TERRY, Betty Ruth Terry, Debtors.**

**Bankruptcy No. 1–87–00749.**

United States Bankruptcy Court, E.D. Tennessee.

Sept. 18, 1987.

Richard L. Banks, Cleveland, Tenn., for debtors.

Mark J. Mayfield, Chattanooga, Tenn., for Credithrift of America, Inc., a creditor.

RALPH H. KELLEY, Chief Judge.

The question before the court is whether to confirm the debtors' chapter 13 plan over the objection of Credithrift, the holder of a nonpriority unsecured claim.

If this were a liquidation case under chapter 7 of the Bankruptcy Code, there would be no payment on nonpriority unsecured claims since the debtors do not have any lien free property over and above their exemptions. Credithrift would be paid nothing.

The plan proposes to pay $105 per week to the Chapter 13 Trustee. Monthly payments on secured claims will total $360. There are no priority claims. The remainder of the payments to the trustee will be paid on administrative expenses and the nonpriority unsecured claims. The plan will take about three years to complete.

The debtors' statement of monthly income and expenses shows take-home income of $1,522 per month, expenses of $835 per month and payments to the trustee of $420 per month.

Credithrift does not argue that the debtors can pay more on nonpriority unsecured claims. Credithrift objects only to dividing the money as proposed in the plan. Credithrift argues that the plans' classification "unfairly discriminates" against its claim in violation of Bankruptcy Code § 1322(b)(1). 11 U.S.C. § 1322(b)(1).

The chapter 13 plan provides payment on nonpriority unsecured claims in full up to $1,000 and 10% on any excess.

The nonpriority unsecured claims are listed below:

| | |
|---|---|
| Columbia House | 27.76 |
| RCA Music | 28.38 |
| Crawford & Floyd Pharmacy | 41.20 |
| Chattanooga Gas Co. | 46.43 |
| Union 76 Service Station | 57.71 |
| Anesthesiologists | 64.30 |
| Animal Hospital | 67.00 |
| AT & T | 89.59 |
| Cleveland Hospital | 92.55 |
| Bradley Medical Center | 175.00 |
| Dentist | 399.00 |
| Hamilton County Workhouse | 413.50 |
| Credithrift | 6,949.07 |

This is the debtors' second plan. The court declined to confirm the debtors' original plan which provided payment on nonpriority unsecured claims in full up to $413 and 10% on any excess. That plan picked the amount of the second largest claim as the cut-off amount so that the small claims would be paid in full, except for 45 cents, and Credithrift would be paid about 15%.

Under the present plan Credithrift will receive more. The maximum that would be paid under the plan on nonpriority unsecured claims in $3,097.33. Of this amount Credithrift will receive $1,594.91, or more than half of all payments to nonpriority unsecured creditors.

Credithrift would like for debtors' plan to provide pro rata payment to non-priority unsecured creditors. Under such a plan Credithrift would receive about 37% of its claim ($2,546.72) rather than 23% ($1,594.91) as provided in the plan. The other and smaller nonpriority unsecured creditors would each receive 63% less under such a plan.

Must the debtors' plan conform with the wishes of one creditor or is it confirmable under the law as is?

The relevant statutes are §§ 1122 and 1322(b)(1) of the Bankruptcy Code. 11 U.S.C. §§ 1122 & 1322(b)(1). Section 1322(b)(1) provides:

(b) Subject to subsections (a) and (c) ... the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 ... but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt if an individual is liable on such consumer debt

with the debtor differently than other unsecured claims....

Section 1122 provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

The court applied these statutes in the very similar case of *In re Ratledge*, 31 B.R. 897, 10 Bankr.Ct.Dec. 1241 (Bankr.E.D. Tenn.1983). In that case, the plan proposed to pay the claims in full up to $500 and 10% of any excess. Avco had a claim for about $3,500, and the next largest claim was $560. The effect of the plan was to pay the small claims 100% or almost 100% and to pay Avco 23% of its claim. The smaller claims were for debts to doctors, drug stores, hospitals, and retail stores—creditors that the debtors might deal with or need to deal with in the future. If the payments were distributed pro rata, Avco would have been paid about 50% of its claim. The plan required 50 months to complete. This court routinely treats the desire to pay a higher percentage as cause to extend a plan past 36 months, but the Ratledges' plan was based on a bare-bones budget. The court probably would have confirmed a 36-month pro rata plan that would have paid Avco little more than the proposed 23%. Such a plan would have been less beneficial to the debtors without being substantially more beneficial to Avco. The court decided that the discrimination against Avco was not unfair and confirmed the plan. The Ratledges completed the plan and received a discharge in 1985.

In *Ratledge* the court generally followed the four-part test applied in *In re Kovich* and other cases cited in the *Ratledge* opinion. *In re Kovich*, 4 B.R. 403, 407, 6 Bankr.Ct.Dec. 482, 484, 2 Coll.Bankr.Cas.2d 203, 207–208 (Bankr.W.D.Mich.1980).

(1) Whether the discrimination has a reasonable basis;

(2) Whether the debtor can carry out a plan without such discrimination;

(3) Whether such discrimination is proposed in good faith; and

(4) The treatment of the class discriminated against.

■ Some courts lean toward the rule that necessity for performance of the plan is the only good reason for allowing the debtor to favor some nonpriority unsecured claims over others. *In re Girardeau*, 35 B.R. 9 (Bankr.D.S.C.1983); *In re Hosler*, 12 B.R. 395, 7 Bankr.Ct.Dec. 1113 (Bankr.S.D. Ohio 1981). Absolute necessity for performance of the plan should not be required in order to justify treating one class of unsecured creditors better than the others.

Section 1122 allows a great number of facts about each claim to be possible points for classification. As a result, there will usually be similarities between the claims in the favored class and the claims in the disfavored class. What limits the facts that can be a basis for classification?

■ The best reason for allowing some claims to be paid more than pro rata is to facilitate performance of the plan or improve the debtors' rehabilitation. See C. Vihon, Classification of Unsecured Claims: Squaring a Circle, 55 Am.Bankr.L.J. 143 (1981). This appears to be the point of the first three questions of the four part test.

Better treatment of a class of claims may be necessary for the debtor to carry out the plan or may facilitate the debtors' performance of the plan without being absolutely necessary. If better treatment of a class of claims can not be justified on these grounds, it may still be justified on the ground that it will improve the debtors' rehabilitation.

A debtor's rehabilitation may be improved as the result of higher payments to doctors, hospitals, merchants, or schools with whom the debtor may deal in the future. *In re Freshley*, 69 B.R. 96, 15

Bankr.Ct.Dec. 533 (Bankr.N.D.Ga.1986); *In re Hill,* 4 B.R. 694, 6 Bankr.Ct.Dec. 568, 2 Coll.Bankr.Cas.2d 681 (Bankr.D.Kan.1980). Of course, there must be limits as to how financially self-serving a classification scheme can be. *In re Green,* 70 B.R. 164 (Bankr.W.D.Ark.1986). The court's point is that whether the debtor's rehabilitation is improved by better treatment of the favored class does not depend on a purely mathematical comparison of the result of the plan and a pro-rata distribution.

■ Assuming a method of classification is allowable under this test, confirmation of the plan can still be denied if the classification unfairly discriminates. The question is whether the reasons for classification justify treating the favored class so much better than the class discriminated against. *Barnes v. Whelan,* 689 F.2d 193, 9 Bankr. Ct.Dec. 626, 8 Coll.Bankr.Cas.2d 855 (D.C. Cir.1982); *In re Freshley,* 69 B.R. 96, 15 Bankr.Ct.Dec. 533 (Bankr.N.D.Ga.1986); *In re Harris,* 62 B.R. 391, 14 Bankr.Ct.Dec. 640, 15 Coll.Bankr.Cas.2d 103 (Bankr.E.D. Mich.1986). This is essentially the fourth part of the four-part test.

■ Creditthrift contends that the debtors' reasons for classification are not an allowable basis for classification, and therefore, do not justify the difference in treatment. Creditthrift's proposed findings of fact and conclusions of law explain:

> In the present case, the only basis for the discrimination was that the claim of the objecting creditor was a deficiency claim. The court is aware that a deficiency claim is usually disliked by a debtor. The debtor feels that he should not have to pay for something he does not have. There is a well-known reluctance to pay a deficiency claim. Yet a deficiency claim is just an unsecured claim. The fact that it is a deficiency claim is no basis to discriminate against [it].

The debtors argue that they classified the small claims separately for the same reason as in *In re Ratledge,* so that local creditors with whom they might deal in the future will be paid in full. The claims to be paid in full generally fit this category with the exception of the two smallest debts to

Columbia House for $27.76 and to RCA Music for $28.38, and the largest of the debts $413.50 owed to the Hamilton County Workhouse. There could be any of several reasons to owe a debt to the workhouse, but it is probably the kind of debt that can be classified for full payment so that the debtors can carry out the plan. The inclusion of this debt and the two smallest debts is not enough for the court to disapprove the classification. The majority of the claims in number and amount is still held by doctors, a drug store, a dentist, a service station, a hospital, and a veterinarian. AT & T is not a local creditor but is much like a national utility that the debtors are likely to deal with in the future. The use of a cut-off amount to establish the kind of class generally approved in *Ratledge* may not always be appropriate, but it is accurate enough in this case.

The debtors did not testify as to their reasons for wanting to pay the small claims in full or for wanting to discriminate against Creditthrift. The court will not assume the debtors have a bad motive, as alleged by Creditthrift, when the debtors have not testified and the record supports their argument for an allowable basis for separate classification of the small claims. *In re Freshley,* 69 B.R. 96, 15 Bankr.Ct. Dec. 533 (Bankr.N.D.Ga.1987) citing *In re Kitchens,* 702 F.2d 885, 10 Bankr.Ct.Dec. 812, 8 Coll.Bankr.Cas.2d 1022 (11th Cir. 1983). The court concludes that the classification is allowable.

The next question is whether the degree of discrimination against Creditthrift is justified by the reasons for the different treatment. Does the plan unfairly discriminate? Creditthrift would have the court focus on the difference in percentages paid—100% on the small claims versus 23% on its claim. This very much distorts the comparison. Creditthrift has not argued that the debtors should be able to pay more than the maximum $3,097.33 that would have been paid on nonpriority unsecured claims if they were all allowed as listed earlier. The real difference that classification makes to Creditthrift is that it will receive about 23% on its claim rather than about 37% under a pro

rata distribution of this total. *In re Moore*, 31 B.R. 12, 8 Coll.Bankr.Cas.2d 1322 (Bankr.D.S.C.1983).

Credithrift is arguing over nonpayment of 14% of its claim. The plan proposes 23% as compared to a maximum 37% under a pro rata plan. The 14% difference to Credithrift is about $952 in amount. On this point, percentages do not tell the whole story. The same percentage difference might be clearly unacceptable in other circumstances. In this case, the plan takes $952 away from Credithrift and uses it to pay the small claims in full. The court concludes that this discrimination against Credithrift is not unfair in light of the purpose of the discrimination.

The court will enter an order confirming the plan. To do otherwise would encourage the debtor to file straight bankruptcy.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.

### ORDER

In accordance with the court's memorandum opinion of this date, it is ordered that the debtors' chapter 13 plan is confirmed and the objection of Credithrift to confirmation is denied.