**In re Bruce Allen GAY and Joyce Elaine Gay, Debtors.**

**Bankruptcy No. 79 B 03683 K.**

United States Bankruptcy Court, D. Colorado.

April 2, 1980.

Thomas E. Croak, Covina, Cal., for debtors.

W. Robert Montgomery, Lakewood, Colo., for Household Finance Corp.

## MEMORANDUM OPINION UPON CLASSIFICATION OF UNSECURED CLAIMS

GLEN E. KELLER, Jr., Bankruptcy Judge.

The Debtors' Chapter 13 plan seeks to separate unsecured claims into two classes. The first class, which is to be paid in full, consists of those creditors to the order of whom the Debtors issued insufficient funds checks. The second class, consisting of all other unsecured creditors, is to be paid 2 percent of their claims. Such classification is urged by Household Finance Corporation to be "unfairly discrimi-

natory" within the meaning of 11 U.S.C. § 1322(b)(1), which provides:

(b) . . . the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated.

Section 1122, referred to in § 1322(b)(1), does not resolve the question of which classifications of unsecured claims are appropriate in Chapter 13. Section 1122(a) merely specifies that only substantially similar claims may be grouped in the same class.[1] It does not require that all substantially similar claims *must* be members of the same class. See *Collier on Bankruptcy*, ¶ 1122.03[1] at 1122–4 (15th Ed. 1979). The propriety of drawing classifications appears to be governed by § 1322(b)(1) while the propriety of including a claim in a particular class is controlled by § 1122. Classifications of unsecured creditors in Chapter 13 are permissible unless "unfairly discriminatory." The determination of what constitutes unfair discrimination requires a view of the nature of the claims in each proposed class and the treatment to be accorded them.

One recent decision, *In re Iacovoni*, 2 B.R. 256, 5 B.C.D. 1270 (D.Utah) would allow classification of claims only where justified by differences in creditors' rights. Since the rights of all unsecured creditors vis-a-vis the debtor are the same, virtually all classifications of unsecured claims are "unfairly discriminatory" under the *Iacovoni* rationale. The opinion states at 1272, 2 B.R. at 260:

The only apparent exception to a uniform classification of unsecured creditors, other than equitable subordination, is found in Section 1122(b) which codifies the "administrative convenience exception" developed by former case law.

This position has the vice of effectively emasculating § 1322(b)(1), which provision

1. Section 1122(b) provides for an exception to this rule where justified by administrative convenience.

**338**

is a significant departure from prior law.[2] Moreover, the language of the statute is inconsistent with the narrow scope attributed to it by *Iacovoni.* Only "unfair discrimination" is prohibited by § 1322(b)(1), not discrimination generally. The inferential authorization of reasonable discrimination compels the conclusion that the touchstone of "unfair discrimination" cannot be solely the nature of the creditor's claim against the debtor. As *Iacovoni* indicates, there is no rational way to distinguish unsecured claims on that basis. Other factors must be taken into account, such as the creditor's rights, if any, against third parties and the importance of the classification to the debtor's "fresh start,"[3] and to his ability to perform under the plan. The propriety of each proposed classification should be considered with reference to the facts of the case. Sound judicial discretion should be exercised in determining whether, from both the creditor's and debtor's point of view, a proposed classification is unfairly discriminatory.

■ In this case two justifications are offered by the Debtors for the disparate treatment of unsecured creditors. The first is that holders of short checks may have the option of proceeding criminally against the Debtors. Counsel for the Debtors has orally advised the Court that the prosecuting authorities in the Debtors' county of residence routinely give short check makers the opportunity to pay the amount of the checks before filing a criminal charge.[4] There is no evidence in the record, however, that the holders of the short checks in this case have or will refer the matter to the prosecuting authorities. It would be speculation to conclude that a criminal action would arise from failure to pay the holders of the checks in full or that such a proceeding would impair the Debtors' ability to perform under their plan. More broadly,

the Court is loath to allow bankruptcy proceedings to become entangled with the criminal process. If the Debtors have violated state law, they should respond to state authority regardless of the treatment of the victims' claims in bankruptcy. The adequacy of the Debtors' response should not be determined in this civil context. Title 11 suggests as much. The automatic stay triggered by the filing of a bankruptcy petition does not restrain the commencement or continuation of any criminal action against the Debtors. See 11 U.S.C. § 362(b)(1).

■ The Debtors also argue that the holders of short checks did not voluntarily extend credit to them and, thus, should receive more favorable treatment under the plan. The Court takes judicial notice of the fact that bad checks are not an unusual phenomenon in the current economic scene. The quantum of risk taken by a retailer who accepts a check does not appear appreciably different than the risk of nonpayment taken by any merchant who advances goods or services on open account. The drawee of a personal check voluntarily takes a "credit risk" when he accepts the instrument in payment for goods or services. Accordingly, the classification proposed by the Debtors herein is "unfairly discriminatory." Confirmation of the plan must, therefore, be denied under the requirement of 11 U.S.C. § 1325(a)(1).

**2.** No classification of unsecured claims was permitted under Chapter XIII. See 5 *Collier on Bankruptcy,* ¶ 1322.01[3][A] at 1322–6 (15th Ed. 1979).

**3.** *In re Fonnest,* 1 *Collier Bankruptcy Cases,* 2d Series 383 (N.D.Cal.1980), suggests that a Chapter 13 debtor may appropriately grant

more favorable treatment to unsecured claims which would be nondischargeable in Chapter 7 than to other unsecured claims.

**4.** The Court expresses no opinion as to the ethical propriety of such a prosecutorial practice.