**In re Margarette BLACKWELL, Debtor.**

**Bankruptcy No. NG 79–02465.**

United States Bankruptcy Court,
W. D. Michigan.

Sept. 5, 1980.

---

749

Bankruptcy Law Clinic, P. C., Murray B. DeGroot and Steven J. Carpenter, Grand Rapids, Mich., for debtor.

Raymond B. Johnson, trustee, in pro. per.

## OPINION

### CHAPTER 13–CONFIRMATION–CLASSIFICATION OF CLAIMS

### –RENT ARREARAGE–GOOD FAITH–

DAVID E. NIMS, Jr., Bankruptcy Judge.

### FACTS

This case concerns confirmation of a plan filed under Chapter 13 of the Bankruptcy Reform Act of 1978 by a debtor who previously had filed a plan under Chapter XIII of the Bankruptcy Act of 1898. The "old" plan, filed on June 6, 1979, and confirmed July 30, 1979, provided a 100% distribution to unsecured creditors. The old plan was dismissed voluntarily on December 26, 1979, and on December 27, 1979, the "new" Chapter 13 plan was filed. This plan proposes a 5% distribution to unsecured creditors, except for the debtor's landlord, who is to receive 100% on a rent arrearage.

The debtor works as an expediter at Steelcase, Inc., earning $915.00 a month (up only slightly from her June income.) In her previous case, debtor indicated that in addition to her salary, she received a quarterly bonus of approximately $750 gross ($600 net.) She is divorced and has three dependent children, ages 8, 13 and 15 years. Her expenses were $635.00 monthly in June and $772.00 monthly as of December. The increase is largely from new rent and utility costs, and also from child care costs of $108.00 monthly which were not on the June list of expenses.

The old plan provided for $62.00 weekly payments; the new plan proposes $33.00 weekly payments. These figures represent the monthly difference between income and expenses, as scheduled, divided by 4.33. The debtor made all payments on time (by company check) under the old plan, and has commenced payments under the new plan.

According to the Trustee's report of receipts and disbursements of March 14, 1980, $1,798.00 had been paid into the old plan. $350.00 went to the debtor's attorney; $231.96 went to filing fees, trustee's expenses and other costs; and $1,216.04 was paid out to secured creditors, Grand Valley National Bank, General Finance Corporation, and Bishop Furniture. The Trustee's report shows that the debtor would have had to continue paying $62.00 weekly for 48 more months to complete the old plan.

The new plan runs for 36 months. The attorney's fee is $300.00. Secured claims total $3,621.00, with the collateral on the Grand Valley National Bank debt (a used 1976 Olds Cutlass bought in August, 1978) valued at $3300.00. The debt to General Finance Corporation ($1,460.00) is now scheduled as unsecured. The landlord's unsecured claim, scheduled at $350.00, is to be paid in full. The other unsecured claims, scheduled at a total of $6,585.00, are to receive 5% ($329.25.)

At the Confirmation Hearing on April 7, 1980, this case was taken under advisement. The issues to be decided are:

1. Whether the plan may separately classify the landlord–creditor and pay him a higher percentage of his unsecured claim than that paid to the other unsecured creditors?

2. Whether the difference in these percentage amounts constitutes unfair discrimination, if the separate classification is allowed?

3. Whether the proposed distribution to the other unsecured creditors violates the "good faith" requirement of 11 U.S.C. § 1325(a)(3)?

## DISCUSSION

1. The Chapter 13 provisions relevant to classification of unsecured claims state:

"§ 1322 Contents of Plan

(a) The plan shall—

. . . (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated . . ."

11 U.S.C. §§ 1322(a)(3), (b)(1)

11 U.S.C. § 1122 reads:

"§ 1122 Classification of claims or interests

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

These provisions do allow the separate classification of an unsecured claim (or claims); there is no requirement that all claims which are "substantially similar" be placed in the same class. *In re Kovich*, 4 B.R. 403 (Bkrtcy., W.D.Mich., 1980); 5 Col-

lier on Bankruptcy § 1122.03 (15th Ed. 1979) p. 1122–4. Therefore, the Chapter 13 plan at bar could not be denied confirmation solely on the ground that it places the landlord's unsecured claim in a class separate from the other unsecured claims.

2. Although the separate classification of the landlord's claim is permissible, any difference between the way the landlord is treated and the way the other unsecured creditors are treated is subject to the "unfair discrimination" test of 11 U.S.C. § 1322(b)(1).

Some degree of discrimination is allowable; otherwise Congress wouldn't have modified the term with the word "unfair." Collier's position is that a difference in percentages to be paid to classes of unsecured creditors is not necessarily "unfair." 5 Collier, *supra* ¶ 1322.01; *see also In re Sutherland*, 3 B.R. 420, 6 Bankr.Ct. Dec. 13 (W.D. Ark.1980). Judge Howard of this Court made the following observation about extra payment on a landlord's unsecured claim:

". . . The fact that these creditors receive more than other unsecured creditors, certainly is a form of discrimination. But it is not necessarily unfair. . . . (B)ecause of a debtor's financial and family situation and the availability of other housing, it may be necessary to make a special provision for past due rent. Such classifications may not be unfair to other unsecured creditors because if they are not permitted the debtor may be forced to file under Chapter 7 and they may receive nothing. Therefore, the classifications are not ipso facto unfair discrimination." *In re Kovich*, 4 B.R. 403, at p. 407 (Bkrtcy.W.D.Mich.1980).

■ As the *Kovich* opinion points out, however, each case must be decided on its own merits; and one consideration in determining whether a Chapter 13 plan discriminates unfairly is the treatment of the class discriminated against, and, specifically, whether these creditors are to receive a meaningful payment. *Id.*

■ Unlike *Kovich*, the amount of the proposed payment to the other unsecured creditors is at issue in this case. Since the amount proposed does not meet the "good faith" standard of 11 U.S.C. § 1325(a)(3) [See the discussion below], it is not necessary to make a finding on the question of "unfair discrimination," although it is hard to see how a plan which does not give unsecured creditors a "good faith" amount can be called "fair." At this point it will suffice to say that each case will involve a number of considerations, including (1) whether the discrimination has a reasonable basis, (2) whether the debtor can carry out a plan without such discrimination, (3) whether such discrimination is proposed in good faith, and (4) the treatment of the class discriminated against. *In re Kovich, supra*, at p. 407.

■ 3. One of the requirements for confirmation of a plan under § 1325(a) is that the plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. Sec. 1325(a)(3). This Court has held that a minimal proposed distribution to unsecured creditors violates the "good faith" requirement even if the distribution meets the so–called "best interest of creditors" test in 11 U.S.C. Section 1325(a)(4). *In re Hurd*, 4 B.R. 551, (Bkrtcy., W.D.Mich., 1980). In determining whether a plan is proposed in good faith several factors must be considered; the debtor's ability to pay, prior petitions in bankruptcy courts, extent and nature of the debts, division by classes and the extent of preferential treatment between classes, the inability to obtain a discharge or the extent of questionable dischargeability of large claims in Chapter 7, the relationship of attorney fees and administrative costs to the distribution to unsecured creditors, and, particularly, whether the proposed distribution to unsecured creditors, is meaningful. *Id.* at 560. The basis of this construction is discussed at length in *In re Hurd, supra*.

■ Only under exceptional circumstances should a 5% Chapter 13 plan be confirmed. In *In re Keckler*, 3 B.R. 155, 6 Bankr.Ct. Dec. 14 (Bkrtcy., N.D.Ohio, 1980) a 5% plan, proposed by a student on a $215.00 per month income who was a for-

mer prisoner trying to rehabilitate herself, was found to be that debtor's "best effort" and was confirmed. That case could be an example of exceptional circumstances. In this case such exceptional circumstances do not exist.

This plan, and many others like it, not only provide for minimal distributions to unsecured creditors, but, also make these distributions only after the attorney fee, administrative costs, secured claims, and priority claims are paid off in full. The unsecured creditors must wait almost three years before their 5% payment will begin. But, once their turn comes, the remaining weekly payments will go only to the unsecured creditors and the trustee. (The trustee gets a 5% fee and 5% for expenses.) Extensions of the duration of the plan will significantly increase the amount going to the unsecured creditors. The following figures are rough estimates, but, if we assume that $29.70 per week or $127.29 per month goes to pay creditors, extensions of the duration of the plan will work as follows:

One additional month increases the distribution an additional 1.93%

A 42 month plan would pay out 16.35%

A 48 month plan would pay out 27.93%

A 54 month plan would pay out 39.51%

A 5 year plan would pay out 51.09%

Funding of the plan might also increase with payment of income tax refunds or bonuses into it. This was done in the *Keckler* case.

It is not the intention of this Court to tell the debtor to amend this plan to five years and put in all tax refunds and bonuses for those years. Unlike the situation in *Hurd*, this debtor has not had a discharge in bankruptcy within the last six years; the previous Chapter XIII plan was bona fide and all payments were made on time; also, the attorney fees are much lower. Other circumstances, not known to the Court, may also be present.

■ Under the principles set forth in *In re Hurd, supra*, the Court cannot find that this plan which proposes to pay one creditor 100%, and other unsecured creditors but 5%,

to pay off a substantial secured creditor and to pay an attorney fee which exceeds the total disbursement to the unsecured creditors being paid 5% is a plan filed in good faith. From the information furnished to the Court, greater payments would not be feasible unless past history would indicate that bonuses and tax refunds would justify a larger percentage to unsecured creditors. The circumstances might justify the Court in finding that cause exists for the approval of a plan which would provide for payments for a longer period than three years in which case an acceptable plan might be feasible. 11 U.S.C. Sec. 1322(c).

Therefore, confirmation of the plan is denied; but, the Confirmation Hearing may be adjourned at which time the Court will consider amendments to the plan and whether or not the case should be transferred to Chapter 7 or be dismissed.