**In re Eugene Austin BOWLES, Jr., Lena Lloyd Bowles, Debtors.**

**Bankruptcy No. 84–01537–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

April 4, 1985.

James R. Sheeran, Esq., Richmond, Va., for debtors.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on December 26, 1984 for a hearing on confirmation of the debtors' proposed Chapter 13 modified plan filed on December 5, 1984, and it appearing to the Court at that time from a review of the plan and the record in this matter that unresolved questions existed as to the debtors' good faith in proposing their modified plan and whether or not the plan unfairly discriminated against a class of unsecured creditors, the Court took the matter under advisement and requested that the standing Chapter 13 trustee and the debtors file briefs on the issues. Simultaneous briefs having been filed by the parties on February 26, 1985, and the Court having reviewed the record and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtors in these proceedings are Eugene A. Bowles and Lena L. Bowles. The couple is married. On October 19, 1984, the debtors filed their joint Chapter 13 petition in bankruptcy in this Court. The Chapter 13 statement filed by the debtors indicates that the husband's present occupation is roofer and his wife's present occupation is computer operator. The debtors have scheduled in their petition secured debt totaling $80,916.59, unsecured debt totaling $52,635.28, and no tax liability owing to any governmental entity. Included in the total amount of unsecured debt listed in the petition is an unsecured obligation owing to Mrs. H.L. English, who is incorrectly listed in the petition as Mrs. G.B. English. The debtors estimated the amount owed to Mrs. English to be $30,000.

Statements by counsel for the debtors at the confirmation hearing on December 26, 1984 indicate that the obligation to Mrs. English referred to above was incurred as a result of the advancement of a sum of money from Mrs. English to Mr. Bowles in exchange for the promise that Mr. Bowles would perform some work for Mrs. English. This work was apparently never performed. As a result, a criminal action was instituted in the Richmond Circuit Court, Richmond, Virginia on charges of obtaining United States currency by false pretense. Mr. Bowles appeared and pled guilty as charged in the indictment, and by order of the state court on October 31, 1984, the court rendered its judgment suspending the imposition of a sentence pending good behavior of the defendant, Mr. Bowles, and on condition that he make restitution to Mrs. English in the amount of $50,000. This sum was payable at a rate of $10,000 per year for five years, the first $10,000 payable in two installments of $1,000 on October 31, 1984 and the balance of $9,000 paid by October 31, 1985.

Mrs. H.L. English filed a formal proof of claim in these proceedings on November 21, 1984 attaching a copy of the order of restitution. The claim is unsecured and shows a balance due of $49,000. This debt

was listed in the debtors' modified Chapter 13 plan as a separate class of unsecured creditors to receive 100% of the allowed amount of the unsecured claim in deferred cash payments paid outside the plan directly to the creditor. The plan also proposes to establish a second class of unsecured creditors, which consists of all remaining unsecured creditors, each of whom will be paid 20% of the allowed amount of their unsecured claims in deferred cash payments from within the plan. The foregoing classes are designated in the plan as Class A and Class B, respectively.

The remainder of the plan provides that the debtors will pay allowed secured claims 100% of the fair market value of each creditor's collateral in deferred cash payments and that these creditors shall retain their liens. Any claim in excess of the fair market value of the collateral is paid under the plan as an unsecured claim. The plan states that there are no priority payments other than the statutory Chapter 13 trustee's fees and attorneys fees in the amount of $750. The debtors propose to fund the plan by turning over to the supervision and control of the trustee an amount approximating $400 per month for four years.[1]

The petition reflects that Mr. Bowles has filed a bankruptcy petition in this Court within the last six years. This petition was the individual bankruptcy of Mr. Bowles and was filed under Chapter 7 on March 5, 1983. Mr. Bowles was granted a discharge in his Chapter 7 case on November 8, 1983. The Chapter 7 trustee in those proceedings,

Robert E. Hyman, filed a complaint against Mr. Bowles to have his discharge revoked and any further discharge denied for failure to include a pre-bankruptcy asset in his petition, and for his post-filing concealment of that asset and failure to turnover the property to the trustee. The trustee prevailed on his complaint thus giving this Court cause pursuant to 11 U.S.C. § 727(d)(1) and (2) to revoke the discharge. The discharge was revoked by Order entered May 4, 1984.

At the hearing on confirmation of the debtors' modified Chapter 13 plan on December 26, 1984, the Court raised *sua sponte* the issues of whether the plan's designation of separate classes of unsecured creditors proposing to pay a single creditor in Class A 100% of its claim while proposing to pay creditors in Class B only 20% of their allowed unsecured claims was unfair discrimination prohibiting this Court from confirming the plan pursuant to 11 U.S.C. §§ 1322(b)(1) and 1325(a)(1), and whether debts scheduled in a prior bankruptcy in which the discharge has been revoked can subsequently be discharged in a Chapter 13 proceeding, and if not, whether confirmation should be denied on grounds that the plan was not proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3).

## CONCLUSIONS OF LAW

The requirements for confirmation of a Chapter 13 plan are contained in 11 U.S.C. § 1325(a).[2] The Court is required

---

1. An inconsistency exists between the debtors' Chapter 13 statement filed with their petition and the proposed funding of their plan. The debtors estimate in their Chapter 13 statement that average future monthly income will exceed future monthly expenses by $244.74. However, the debtors' proposed modified Chapter 13 plan indicates that the plan will be funded by a wage assignment on the income of Mrs. Bowles in the amount of $199.34 semi-monthly or approximately $400 per month. The proposed funding of the plan therefore exceeds the available income shown on the Chapter 13 statement. The debtors have not explained this discrepancy nor have they proffered any indication of the availability of funds to make payments to the Class A unsecured creditor outside the plan.

2. § 1325. Confirmation of plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor

to confirm a Chapter 13 plan if, and only if, all six of the requirements of subsection (a) of § 1325 have been met. *See In re Cooper*, 3 B.R. 246 (Bankr.S.D.Cal.1980). In this regard, the Court is under an independent duty to verify that the plan does in fact comply with the law irrespective of the lack of objection by creditors or the Chapter 13 trustee. Consequently, although no objections to confirmation have been filed by any party in interest in this matter, this Court has nevertheless independently endeavored to examine the plan for compliance with the applicable provisions of Title 11.[3]

▮ In order for a Chapter 13 plan to be confirmable under § 1325(a)(1), it must comply with § 1322 relative to the contents of a plan. Among the permissible optional contents of a plan are the classification of certain creditors under § 1322(b)(1),[4] which allows the debtor to designate a class or classes of unsecured claims in the manner provided in § 1122 of Title 11,[5] but prohibits the debtor from unfairly discriminating against any class so designated. In Chap-

ter 13, the Bankruptcy Code does not prohibit all discrimination between classes of unsecured creditors, just that discrimination which is unfair. *In re Gay*, 3 B.R. 336 (Bankr.D.Col.1980).

In the case currently before the Court, the debtors designate two classes of unsecured claims "A" and "B" which they differentiate by proposing to pay Class A in full and Class B 20% of their allowed unsecured claims. Class A consists of only one creditor, Mrs. H.L. English, with a claim of $49,000 arising out of an order of restitution from a state criminal proceeding wherein the debtor, Mr. Bowles, pled guilty to obtaining United States currency by false pretense. The debtors' attempt to justify their discrimination against all other unsecured creditors in Class B by maintaining that if such restitution is not made in full, the state court will impose a jail sentence on Mr. Bowles for his crime. For the reasons which follow, however, this Court must conclude that the debtors' justification is not sufficient to enable this Court to

were liquidated under chapter 7 of this title on such date;

 (5) with respect to each allowed secured claim provided for by the plan—

 (A) the holder of such claim has accepted the plan;

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

 (C) the debtor surrenders the property securing such claim to such holder; and

 (6) the debtor will be able to make all payments under the plan and to comply with the plan.

**3.** Unlike Chapter 11 proceedings, creditors in a Chapter 13 case have no right to vote either for or against a proposed plan, although secured creditors can reject the plan if not properly provided for pursuant to § 1325(a)(5) and all creditors may file objections to confirmation. The bankruptcy court is required to confirm a plan irrespective of any objections to confirmation, provided that the plan complies with the applicable provisions of § 1325(a) and the value of the property distributed under the plan is not less than the amount of the claim, or the plan provides that all of the debtors' projected dispos-

able income in the three (3) years following initiation of payments under the plan will be used to fund the plan. 11 U.S.C. § 1325(b). However, in the case currently before the Court, no objections to confirmation were filed. Therefore, the conclusions hereinafter reached by this Court are solely the result of the Court's duty to insure compliance with the provisions of the Bankruptcy Code.

**4.** § 1322(b). Subject to subsections (a) and (c) of this section, the plan may—

 (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated, however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

**5.** § 1122. Classification of claims or interests.

 (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

 (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

make a finding that the proposed Chapter 13 plan does not unfairly discriminate against Class B creditors.

In the case of *In re Gay*, 3 B.R. 336 (Bankr.D.Col.1980), the debtor proposed a Chapter 13 plan with two classes of unsecured creditors. One class consisted of those creditors to whom the debtor had issued insufficient fund checks and was to be paid in full. The other class of unsecured creditors, consisting of the remainder of unsecured claims, was to be paid 2% of their allowed claims. The debtor's major justification for such discrimination lay in the fact that the holders of short checks had the option of proceeding criminally against the debtor. *Id.* at 338. The debtor argued that if restitution were made to these creditors, the debtor could avoid prosecution for these crimes. In deciding that the proposed classification was unfairly discriminatory, the court in *Gay* held that it rests in the bankruptcy court's sound discretion as to whether or not a proposed classification violates § 1322(b)(1). In exercising that discretion, the court rejected the debtor's proposed justification and stated that it was speculative as to whether a criminal prosecution and possible sentence would impair the debtor's ability to perform under the plan.

Another significant case was *In re Blackwell*, 5 B.R. 748 (Bankr.W.D.Mich. 1980). In *Blackwell* the debtor's Chapter 13 plan proposed two classes of unsecured creditors. One class, consisting of the debtor's landlord, was to be paid in full while a second class, consisting of all other unsecured creditors, was to receive only 5% of their allowed claims. The issues were whether the proposed plan discriminated against the class receiving only 5% and whether the plan was proposed in good faith. The court found that four factors should be considered when determining whether a Chapter 13 plan discriminates unfairly: "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without such discrimination; (3) whether such discrimination is proposed in good faith; and (4) the treatment of the class discriminated

against." *Id.* at 751 (citing *In re Kovich*, 4 B.R. 403 (Bankr.W.D.Mich.1980)). The court also noted the interrelationship of the requirement of no unfair discrimination with the requirement of good faith under § 1325(a)(3) and specifically held that a plan which unfairly discriminates against a designated class of unsecured creditors may also be found to be lacking in good faith. *Id.* at 751–52. In *Blackwell*, the court denied confirmation on the basis of unfair discrimination and lack of good faith in proposing minimal repayment to one class of unsecured creditors.

The four factors cited in *Kovich* and adopted in *Blackwell* for determining whether a plan is unfairly discriminatory to one class of unsecured creditors were also adopted by the bankruptcy court in *In re Dziedzic*, 9 B.R. 424 (Bankr.S.D.Tex.1981). In *Dziedzic*, the debtor was a police officer who proposed to pay the Police Federal Credit Union in full outside the plan while all other unsecured creditors would be paid 26% inside the plan. The debtor's justification for such discrimination was that his failure to pay the credit union in full would jeopardize his job standing, affect his social relationships with co-workers, cause him some embarrassment, and finally that any payment less than full might subject the debtor to threats of physical abuse or death. The court in *Dziedzic* found the debtor's proffered justification to be insufficient under the four criteria established in *Kovich* and *Blackwell* and refused to confirm the plan. *Id.* at 427.

A similar result was reached in *In re Hosler*, 12 B.R. 395 (Bankr.S.D.Ohio 1981). In *Hosler*, the debtors proposed to pay in full certain physicians involved in ongoing treatment of the debtors' family while only paying 20% to the remainder of their unsecured creditors, including some other physicians no longer involved in ongoing treatment. The *Hosler* court found that the test of unfair discrimination was a subjective one to be determined on a case-by-case basis. *Id.* at 396. In adopting the four factors of *Kovich*, *Blackwell*, and *Dziedzic*, the court found that the proposed discrimi-

nation was not fair in that (1) the degree of discrimination was "significant," (2) there was no showing that the classification was necessary to carry out the Chapter 13 plan, and (3) that although the classification was "understandable" it was nevertheless without a reasonable basis. *Hosler*, 12 B.R. at 396. Perhaps as importantly, the court pointed out that a lawful classification under § 1322(b)(1) requires more than just the personal preference of the debtor. *Id.*

■■■ The foregoing cases were designated by the District Court in *In re Cook*, 26 B.R. 187 (D.N.Mex.1982)[6] as the "emerg[ing] majority view." *Id.* at 190. This view is that the bankruptcy court has an independent duty to ensure that a proposed Chapter 13 plan does not unfairly discriminate against a class of unsecured creditors and that whether or not a particular plan does so discriminate is to be determined on a case-by-case basis taking into consideration all of the pertinent facts peculiar to each case of which the four factors cited by the preceding cases is indicative. *In re Hosler*, 12 B.R. at 396. In this regard, the bankruptcy court has much discretion in deciding whether the circumstances warrant a finding of unfair discrimination. *In re Gay*, 3 B.R. at 338. Moreover, the debtor bears the burden of proving that the proposed plan does not unfairly discriminate. *In re Cook*, 26 B.R. at 190.

This Court finds that the case-by-case approach taken by the courts in the aforementioned cases is consistent with the approach taken by this Court in *In re Walker*, 20 B.R. 372 (Bankr.E.D.Va.1982). In *Walker*, this Court had occasion to consider a modified Chapter 13 plan in which the unsecured creditors, who comprised but a single class, were to be paid 10% of their allowed claims—an amount which had been reduced from 39% from the original plan to 10% in the modified plan. The debtors argued that the decrease was justified because the husband had been laid off from work after confirmation of the original plan. This Court found that in the context of the facts and circumstances of that case, the payment of 10% to unsecured creditors was not meaningful, was unfairly discriminatory, and was not proposed in good faith inasmuch as the debtors proposed to retain two automobiles when the retention of one automobile would have allowed the debtors to continue the approximate percentage of repayment to unsecured creditors as had been provided for in the original confirmed plan.

■■ Accordingly, this Court finds the majority of cases to be in line with this Court's interpretation of § 1322(b)(1). This interpretation is that the courts should use a flexible standard to determine what is equitable and this flexibility comes from a case-by-case approach examining carefully the totality of the facts and circumstances of the case. In this regard, the four factors delineated by *Kovich, Blackwell, Dziedzic, Hosler* and *Cook* are helpful in structuring the analysis so that application of a flexible standard will be consistent between cases over time. However, these factors are not to be viewed as limiting the court in its consideration of other pertinent matters.

Moreover, the Court finds the foregoing to be consistent with the Fourth Circuit's decision in *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982) which established a case-by-case totality of the circumstances approach to the good faith issue contained in § 1325(a)(3).[7] Inasmuch as good faith is an

---

6. In *Cook*, the District Court remanded the case to the bankruptcy court for a further determination of the issues of unfair discrimination and good faith in accordance with the views set out in *Gay, Blackwell* and *Dziedzic*. 26 B.R. at 190–91.

7. In *Deans*, the Fourth Circuit was considering the District Court's affirmation of the bankruptcy court's denial of confirmation of the debtor's Chapter 13 plan for lack of good faith pursuant

to § 1325(a)(3). Under the *Deans* plan, the unsecured creditors were to receive no payments whatsoever. The Fourth Circuit in *Deans*, in rejecting importation of a *per se* substantial repayment requirement into the "good faith" element of confirmation, held that no precise definition of "good faith" could be sculpted to fit every case and thus, the appropriate inquiry was to determine whether under the facts and circumstances of the case the plan as proposed

issue under § 1322(b)(1) under the majority view, the court feels that such consistency is mandated and desirable. A determination of good faith in each instance involves a consideration of the factors outlined in the *Deans* decision.[8] The Court believes this analysis to be the most consistent with the proper interpretation of § 1325(a)(1), (3), and § 1322(b)(1).

 Applying the law to the facts in this case, the circumstances reveal that the treatment accorded unsecured creditors in Class B is such that they are to receive only 20% of their allowed unsecured claims under the modified Chapter 13 plan, an amount reduced from 25% in the original plan. Included among the Class B unsecured creditors are a number of creditors who existed at the time of the prior Chapter 7 bankruptcy when Mr. Bowles had his discharge revoked by this Court for cause.[9] These creditors along with the rest of the scheduled unsecured creditors are receiving substantially less under the plan as a direct result of Mr. Bowles' criminal misconduct outside and prior to this bankruptcy proceeding, which conduct ultimately led to an order of restitution for $50,000 in lieu of a jail sentence. Thus, these creditors are being asked to suffer the consequences of the debtors' own misdeeds.

This Court sitting as a court of equity concludes that it is eminently and patently unfair in the circumstances of this case to discriminate between an unsecured creditor made so by an order of restitution and other unsecured creditors, to the extent of paying the latter group one fifth (⅕) of the payment of the first. The debtors' justification for the discrimination, *i.e.*, that he doesn't want to go to jail, is not substantially different than the argument advanced in *Gay*—the debtor in that case wanted to secure payment to some of his unsecured creditors in full to avoid prosecution and the imminent possibility of going to jail for his crime. The only distinction between the two cases is that in *Gay* the conviction had not yet occurred. However, this Court is not convinced that the prospects of punishment would not have been equally as certain in *Gay*. Thus, there is not a valid distinction on this basis. Moreover, reasons can be found in almost every case why one unsecured creditor should be preferred over another thus justifying a different repayment percentage. However, Chapter 13 is not an unbridled "market" in which the debtor may, even with some justification, pick and chose which creditors he seeks to prefer. *Hosler*, 12 B.R. 395, 396 (Bankr.S.D.Ohio 1981).

would constitute "an abuse of the provisions, purpose or spirit of [Chapter 13]." *Deans*, 692 F.2d at 972.

8. The eight (8) factors outlined in *Deans* include: (1) the percentage of proposed repayment under the plan; (2) the debtors' financial situation; (3) the period of time repayment will be made; (4) the debtors' employment history and prospect; (5) the nature and amount of unsecured claims; (6) the debtors' past bankruptcy filings; (7) the debtors' honesty in representing facts; and (8) unusual or exceptional problems facing the debtor. *Id.* at 972.

9. Mr. Bowles seeks to discharge debts in these Chapter 13 proceedings which in Chapter 7 would presently be subject to dischargeability objections pursuant to § 523(a)(10) (incorrectly designated as (a)(9) by the 1984 amendments to Title 11). *See In re Klapp*, 706 F.2d 998 (9th Cir.1983); *In re Mendoza*, 16 B.R. 990 (Bankr.S. D.Cal.1982) (those courts holding that the revocation of a discharge is equivalent to denial of discharge for purposes of former § 523(a)(9)).

As a result, these debts can never be discharged in a subsequent Chapter 7 case. However, due to the more liberal discharge provisions of Chapter 13 as contained in § 1328(a), these debts may be discharged in Chapter 13 inasmuch as they do not consist of those debts provided for in § 1322(b) and § 523(a)(5). Consequently, despite the misconduct of the debtor in his prior bankruptcy, and although perhaps not the intention of Congress, this Court would have difficulty imputing a lack of good faith solely on the basis that the debtors seek to confirm a Chapter 13 plan and ultimately discharge these debts. *See In re McAloon*, 44 B.R. 831 (Bankr.E.D.Va.1984) (where this Court found that no lack of good faith can be imputed solely on the basis that the debtor desired to take advantage of the liberal discharge provisions of Chapter 13). However, this fact does not resolve the ultimate issues in this case of whether the plan unfairly discriminates against Class B creditors or is proposed in good faith.

Under a different set of circumstances, such a disparity as exists in this case might not be unfair. Each case rests on its own facts, and the percentage of repayment necessary to accord fairness to each class of unsecured creditors will be determined by the facts and circumstances and equities involved in the case. There is no evidence in this case that the debtors could not propose a viable plan which did not unfairly discriminate against Class B creditors. Thus, the discrimination proposed is not necessary to the actualization of the plan. Unsecured creditors in Chapter 13 are not without some protection, and the Court must weigh the creditors' interest in a meaningful repayment against the debtors' interests in a "fresh start" and a workable plan. In some cases, a meaningful repayment may be as little as that which a creditor would receive in liquidation, while in other cases a more substantial sum is required in order to accord a degree of fairness between classes of unsecured creditors. Under the circumstances of this case, the Court finds that a more substantial sum is required to accord fairness. The Court must conclude having considered all the factors contained in *Deans* and from all the circumstances of this case that the plan is not a good faith attempt by the debtors to propose a reasonable degree of remuneration to their unsecured creditors.[10]

Congress has chosen a standard in § 1322(b)(1) which in the administration of cases in Chapter 13 and the confirmation of plans under § 1325 necessarily involves the exercise of discretion. A review of the contents of this plan and the totality of the facts and circumstances of this case leads this Court to conclude that the plan is (1) lacking in good faith and (2) unfairly discriminates against Class B unsecured creditors, and accordingly, the debtors' modified Chapter 13 plan cannot be confirmed for failure to comply with § 1322(b)(1), § 1325(a)(1), and § 1325(a)(3). Therefore, confirmation of the debtors' modified Chapter 13 plan should be denied.

An appropriate Order will issue.

---

10. This Court also notes that the plan fails to specify the manner of payment to the Class A creditor outside the plan. Without such a designation provided for in the plan, neither this Court nor the creditor can determine when the debtor proposes to make payments on the claim, and the debtor would not be bound by any repayment schedule. Although this Court finds that a plan may provide for the payment of debts "outside the plan" by direct payment from the debtor to the creditor, such a provision in the plan should not free the debtor to do as he will with regard to such creditor. Thus, a provision in a Chapter 13 plan for direct payment to a creditor must include the manner of such payment. In this case, payment to the Class A creditor outside the plan could have included a statement that payment would be made in accordance with the terms of the existing order of restitution if that were the intent of the debtors. Failure to do so in this case is yet another reason why the debtors' modified Chapter 13 plan cannot be confirmed. *See generally Foster v. Heitkamp*, 670 F.2d 478 (5th Cir.1982).