**In re Jon Stuart HARRIS and Barbara Vallet Harris f/d/b/a The Mustard Seed, Debtors.**

**Bankruptcy No. 85–08004.**

United States Bankruptcy Court,
E.D. Michigan,
S.D.,
at Flint.

June 13, 1986.

Samuel S. Reiter, Owosso, Mich., for debtors.

Timothy E. Baxter, Grand Rapids, Mich., for Spring Arbor Distributors.

Carl L. Bekofske, Flint, Mich., Chapter 13 trustee.

### MEMORANDUM OPINION REGARDING DEBTORS' PROPOSED CHAPTER 13 PLAN

ARTHUR J. SPECTOR, Bankruptcy Judge.

The debtors filed their joint petition for relief under Chapter 13 on August 19, 1985. In their petition, they list their unsecured debts in two separate categories: one for debts incurred during the operation of their bookstore, The Mustard Seed; the other for unsecured consumer debts. Ac-

cording to their schedules, the business debts are in the amount of $19,697.80, plus a debt of $50,438 to Old Kent Bank-Central representing the unsecured portion of its claim, for a total of $70,135.80; the consumer debts total $1,920.70.

The debtors' proposed Chapter 13 plan continues this distinction between business and consumer unsecured debt. Consumer debts are listed as "Class 3" debts, on which the debtors propose to pay 100% over three years. "Class 5" debts constitute the unsecured business debts. The debtors estimated that there will be no distribution to this class. Moreover, as counsel for the debtors stated on the record, it was their intention not to pay business creditors when they formulated their plan. However, it appears that there may in fact be some distribution to Class 5 creditors due to the failure of some Class 3 creditors to file proofs of claim. In their confirmation worksheet filed after the confirmation hearing on April 16, 1986, the debtors state that filed unsecured consumer claims total $1,521.62, and filed unsecured business claims total $57,426. Assuming that these figures are correct, consumer creditors would still receive 100% payment, and business creditors would receive 4.82% on their claims. By way of comparison, if all unsecured creditors are paid without regard to how the debt was incurred, each would receive 7.28% of its claim.

■ On March 29, 1986, Spring Arbor Distributors, an unsecured business creditor of the debtors, filed an objection to the debtors' plan. The basis of its objection is that the above classification of unsecured creditors unfairly discriminates against the business creditors, and that such treatment is barred by the Bankruptcy Code.[1] After a hearing on April 16, the Court took the matter under advisement.

■ The debtors' authority to classify unsecured claims separately is contained in 11 U.S.C. § 1322(b)(1). Under this section the debtors' plan may:

(1) designate a class or classes of unsecured claims, as provided in § 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on the consumer debt with the debtor differently than on other unsecured claims.

There is no indication that the unsecured consumer debts being paid 100% under the proposed plan are debts on which third parties are liable as co-obligors; thus, the last clause of § 1322 is inapplicable.

Section 1122, to which § 1322 refers, does not offer much guidance. It provides that a debtor may designate various classes of creditors, so long as each member of that class holds a claim or interest that is "substantially similar" to the claims or interests of other class members. There is, unfortunately, no statutory definition of what makes claims or interests "substantially similar" to each other. Section 1122(a) has been characterized as "not a model of statutory clarity", *In re Wolff*, 22 B.R. 510, 515, 9 B.C.D. 451, 454, 6 C.B.C.2d 1282, 1288 (9th Cir. B.A.P. 1982) (concurring opinion), and we are therefore reluctant to rely on it.

Fortunately, there have been a considerable number of cases discussing what sorts of classifications of unsecured claims are permissible under § 1322. The debtors rely on *In re Cook*, 26 B.R. 187, 7 C.B.C.2d 1079 (D.N.M.1982). There, the debtor sought to pay unsecured debts guaranteed by a co-signor and claims for child support, but nothing to other unsecured creditors. The court adopted the "emergent majority

---

1. Neither party briefed the issue. In fact, the objecting creditor failed to appear at the confirmation hearing to even argue its objection. The only legal argumentation was by the debtors' oral presentation at the confirmation hearing. Technically, the objecting creditor may be deemed to have abandoned its objection. Not-

withstanding that, however, the Court has an independent duty to determine whether the plan meets the standards for confirmation under 11 U.S.C. § 1325(a) and to deny confirmation when it appears not to comply therewith. *In re Bowles*, 48 B.R. 502, 505, 12 B.C.D. 1297, 1298 (Bankr.E.D.Va.1985).

view" that "[a] classification is not *ipso facto* unfairly discriminatory because it provides for a greater percentage of payment to some unsecured creditors than to others." *Id.* 7 C.B.C.2d at 1082. In order to determine whether a particular classification was fair, the court went on to espouse a four-factor test developed by other courts.[2] Those factors are:

   (1) Whether the discrimination has a reasonable basis;

   (2) Whether the debtor can carry out a plan without such discrimination;

   (3) Whether such discrimination is proposed in good faith; and

   (4) the treatment of the class discriminated against.

*Id.* These factors are not rigid rules, but are simply flexible guidelines to assist courts in deciding whether a debtor's plan ought to be confirmed. Each plan should be decided on its own merits. *In re Bowles,* 48 B.R. 502, 12 B.C.D. 1297, 12 C.B.C.2d 952 (Bankr.E.D.Va.1985). Although to a large extent these guidelines overlap, the reasoning of these opinions is sound and we adopt it.

██ The standards are consistent with two underlying purposes of the Bankruptcy Code. On the one hand, the remedies provided debtors in the Bankruptcy Code, including Chapter 13, are intended to provide debtors with the opportunity to emerge from bankruptcy with the famous "fresh start". *In re Keyworth,* 47 B.R. 966, 974, 12 B.C.D. 1137, 1142 (D.Colo.1985); *In re Gibson,* 45 B.R. 783, 787 (Bankr.N.D.Ga. 1985). Chapter 13 gives debtors wide latitude to propose a plan which will allow them to pay their debts without undue hardship, yet exit from bankruptcy in sounder financial shape than when they filed for relief. Thus, § 1322(b)(1) allows debtors to discriminate among unsecured creditors where it is beneficial to the debtor to do so. However, the objective of providing debtors with a fresh start is counterbalanced by the Congress' intent that the debtor's creditors be treated fairly. More precisely, it is fundamental to the operation of the Code that creditors of an equal status—e.g. priority, administrative and unsecured—be treated equally and equitably. *See* 11 U.S.C. § 726(b); *In re Oak Creek Farms, Inc.,* 37 B.R. 178 (Bankr.D.Minn. 1984); *In re Universal Research Laboratories, Inc.,* 13 B.R. 856, 859 (Bankr.N.D. Ill.1981). Accordingly, while the debtor may classify unsecured creditors differently, they cannot do so in such a fashion that any single class is treated unfairly, that is, inequitably. As the Code presumes that creditors of like position will be treated equally, the debtor has the burden of persuading us that a deviation from that norm is not unfair to creditors. *In re Bowles, supra,* 48 B.R. at 507, 12 B.C.D. at 1299, 12 C.B.C.2d at 958; *In re Cook, supra.*

Applying the four-part test to the facts of this case, we find that the debtor has failed to show that the proposed discrimination is fair. The first factor is whether the discrimination has a reasonable basis. We interpret this to be an inquiry into whether there is any logical or rational foundation for the classification. For example, classifying creditors alphabetically would have no rational basis in the context of a Chapter 13. Here, the debtors have divided their creditors into those who extended credit to them in the operation of their prior business, and those who extended credit for personal consumer purposes. Simply put, the debtors have closed their bookstore and have no further interest in paying the debts incurred therefrom or of maintaining an ongoing debtor-creditor relationship with their business creditors. Conversely, they wish to repay those parties who lent them money or extended them credit for personal needs, and who the debtors will likely encounter post-bank-

---

**2.** Among the first courts to articulate these guidelines were those in the Western District of Michigan. *See In re Blackwell,* 5 B.R. 748 (Bankr.W.D.Mich.1980), and *In re Kovich,* 4 B.R. 403, 2 C.B.C.2d 203 (Bankr.W.D.Mich. 1980). *See also In re Perkins,* 53 B.R. 422, 13 B.C.D. 811 (Bankr.N.D.Okla.1985); *In re Bowles, supra; In re Wolff,* 22 B.R. 510, 9 B.C.D. 451, 6 C.B.C.2d 1282 (9th Cir. B.A.P. 1982); *In re Hosler,* 12 B.R. 395 (Bankr.S.D.Ohio 1981); *In re Dziedzic,* 9 B.R. 424, 4 C.B.C.2d 1 (Bankr.S.D. Tex.1981).

ruptcy. The classification thus is rational at least from the debtors' perspective.

The proposed classification makes less sense when evaluated in terms of recourse available to the unsecured creditors. Legally, all of the unsecured creditors in this case, business and consumer, would have the same remedies under state law to pursue collection of their debts. After obtaining a judgment for the balance due, they could attempt to satisfy it through garnishment of wages and deposit accounts or by execution on the debtors' property. In reducing their claims to hard cash, the law cares not whether credit was extended to the debtors for an ill-fated business enterprise or for the debtors' personal needs. Of course, we realize that in practical terms the ability of creditors to pursue their legal remedies may differ; however, it is not the purpose for which the debts were incurred that makes them different. For example, some creditors may hold claims against the debtor for which there may be a co-obligor. Against the debtor, that creditor has the same rights as any unsecured creditor; but the creditor's ability to seek payment from a third-party (often a member of the debtor's family) gives that creditor added leverage against the debtor. Thus, § 1322(b)(1) expressly allows debtors to establish a separate class for unsecured consumer debts on which a non-debtor is liable. Additionally, some claimants may possess claims so small that it is impractical for the creditor to pursue its legal remedies. Suppose a creditor holds an unsecured claim for $100.00; even if that creditor could find counsel willing to litigate the matter, it would probably cost more than $100.00 to do so. Because creditors so situated may have *fewer* remedies against the debtor, § 1122(b), and by reference § 1322, provides that such creditors may be separately classified. As *Colliers* has noted, in enacting an amendment to § 1322(b) in 1984,

> ... Congress has recognized that practical necessity can be a proper reason for separate classification of claims. In doing so, it has apparently rejected the view that unsecured claims may be sepa-

rately classified only if they would receive differing distributions in chapter 7 and allowed the court to consider the practical justifications for proposed classifications on a case-by-case basis.

5 *Collier on Bankruptcy*, ¶ 1322.-01[3][A](i), 1322–8 (15th ed. 1979).

Thus some classifications among unsecured creditors may be found to be fair. Suppose, for example, a debtor was compelled to pay a criminal restitution debt or risk imprisonment. There, the debtor would certainly benefit by paying that debt in full and perhaps in advance of other unsecured creditors; but this would likely inure to the benefit of the "lesser" class, because they might receive nothing if the debtor goes to jail. *Contra, In re Gay*, 3 B.R. 336, 6 B.C.D. 149, 1 C.B.C.2d 790 (Bankr.D.Colo.1980). Or, a debtor who wished to continue his or her business might want to pay business creditors *more* as a means of maintaining good relations with essential suppliers, for if those suppliers are not made happy the business might fail, causing both the debtor and the less favored creditors to lose out. Separately classifying these creditors may be reasonable. *In re Sutherland*, 3 B.R. 420, 6 B.C.D. 13, 1 C.B.C.2d 571 (Bankr.S.D.Ark. 1980). *See also In re Perskin*, 9 B.R. 626, 7 B.C.D. 798, 4 C.B.C.2d 294, 300–02 (Bankr. N.D.Tex.1980) (traveling salesman permissibly discriminated in favor of credit card creditors).

Although the unhappy creditor there was partially secured, in *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982) the Court of Appeals implicitly authorized different treatment of otherwise similar claims based on the manner in which the claims were incurred. There, the debtor had obtained a car loan by inflating her statement of income on the loan application. One of the issues was whether the debtor's plan was filed in good faith when the debt might have been incurred fraudulently. In remanding the case for further determinations, the Court of Appeals stated that the bankruptcy court could, as we do here, deny confirmation. *Id.* at 432.

However, the court went on to provide another alternative: it could require that the debt which was incurred under questionable circumstances be paid in full. *Id.* If the court has authority to order separate treatment for such debts, it follows that the debtor could offer such a plan in good faith. Similarly, it has been held that otherwise nondischargeable debts may be separately classified from other unsecured debts for favored treatment. *In re Sanders*, 13 B.R. 320, 4 C.B.C.2d 1397 (Bankr.D. Kan.1981); *In re Haag*, 3 B.R. 649, 6 B.C.D. 367, 2 C.B.C.2d 144 (Bankr.D.Or. 1980); *In re Curtis*, 2 B.R. 43, 5 B.C.D. 1214, 1 C.B.C.2d 314 (Bankr.W.D.Mo.1980).

In the case at bar, the classification suggested by the debtors was not proposed with any regard to the ability of the various creditors to collect their debts. So far as we can tell, there are no debts on which there is a co-obligor with either of the debtors. Furthermore, the proposed classification has no correlation to the size of the various claims. According to the debtors' schedules, the unsecured business claims range in size from $10.96 to $8,500.00; the consumer claims range from $154.04 to $988.00.[3] In the instant case, the business creditors would receive no benefit as a result of the proposed classification, either directly or indirectly, nor is there any moral justification for preferring any of the consumer creditors. We also reject the debtors' unsubstantiated assertion that business creditors are more able to take care of themselves than consumer creditors.[4] In short, we find that while the proposed classification may have a rational basis from the debtors' position, it is arbitrary when examined from the creditors' viewpoint. This makes the proposed classification suspect.

The second factor is whether the debtors could consummate a plan without the proposed classification. We find that they could do so. As noted above, assuming the same level of funding and duration of plan as has been proposed, if unsecured creditors are not classified, each would receive 7.28% on its claim. Although plans paying an unusually low percentage may draw closer scrutiny than 100% plans, they may be confirmed if the plan otherwise complies with the standards for confirmation in § 1325. Although the debtors might be able to consummate a non-discriminatory plan, it is not necessarily fatal to their plan that they have not done so.

---

**3.** This does not count the unsecured claim of Key State Bank-Central representing the undersecured portion of its claim. Also, by this statement we are not implying that the "administrative convenience exception" of § 1122(b) necessarily is carried over into Chapter 13 classification analysis, since the exception was designed to

> ... obviate the necessity of issuing securities in fractional amounts to small claimants. In some cases, separate classification permitted the payment in full of small claims, thereby relieving the proponent of the plan of the administrative burden of soliciting consents of such claimants to the plan.

5 *Collier on Bankruptcy*, ¶ 1122.03[2], 1122–9 (15th ed. 1979), and although § 1322(b) seems to incorporate all of § 1122, including § 1122(b), which is the codification of the administrative convenience exception, it has been noted that:

> Reliance on definitions in and interpretation of Section 1122 and its forerunner cases is of little help in the classification problems confronting courts in Chapter 13. The definitions and interpretations given are clearly tailored for either Chapter XI or 11, i.e. separate treatment of various types of stockholders, mortgage holders, etc. Reorganization cases and situations have little or no meaning in the Chapter 13 individual repayment plan context.

*In re Hill*, 4 B.R. 694, 698–99, 6 B.C.D. 568, 571, 2 C.B.C.2d 681, 686 (Bankr.D.Kan.1980) (citations omitted).

**4.** At the hearing on confirmation of the plan, debtors' counsel proposed another distinction. He contended that those businesses which extended credit to the debtors' store were more aware of the "risk factor" entailed in such lending, and were better able to protect their interests than were consumer creditors. We reject this as a rational basis, as we find no evidence that these statements are true, either in this or any other case. Parenthetically, we note that at least one of the debtors' consumer creditors is Michigan Bankard which issued the debtors a VISA card. Another creditor is Consumers Power Company, a local utility. Surely these creditors are as able as trade creditors to protect their interests.

The third factor is whether the discrimination is proposed in good faith. This is where the debtors' plan fails. As we have stated above, the debtors are attempting to wash their hands of their business and the debts they accumulated in its operation. Their stated intent was to pay their business creditors nothing, and it is only because some creditors neglected to timely file proofs of claim that creditors of the business might receive any distribution at all. In attempting to obtain a discharge of these debts without making any payment thereon, the debtors are essentially seeking to file a Chapter 7 petition for their business and a Chapter 13 petition for their personal, preferred creditors. This flies in the face of the policy that similarly situated creditors receive equal treatment under the Bankruptcy Code, and cannot be held to constitute a good faith proposal. *Cf. In re Matthews*, 10 B.R. 533 (Bankr.W.D.Mich. 1981). We agree with the statement made in *In re Bowles* that "Chapter 13 is not an unbridled 'market' in which the debtor may, even with some justification, pick and choose which creditors he seeks to prefer." *Id.*, 48 B.R. at 508, 12 B.C.D. at 1301, 12 C.B.C.2d at 960.[5] The debtors bear the burden of showing that their plan is filed in good faith. *In re Gibson, supra.* Because the debtors have failed to persuade us that their proposed classification satisfies this standard, § 1325(a)(3), their plan cannot be confirmed.

Although the above finding makes consideration of the impact of the classification on the adversely effected creditors superfluous, we will discuss it briefly. While the good faith requirement may be regarded as a test of whether the plan is consistent with the spirit underlying Chapter 13 relief, this last factor measures the practical consequences to the affected creditors. Here, the result is obviously unfair. The debtors' consumer creditors will receive full payment; however, their business creditors will receive nothing, or, at best, an inadvertent and insignificant amount. Nonetheless, the debtors' discharge will *not* discriminate between business and consumer debts—each will be discharged. Indeed, because this is a Chapter 13 case, the effect of a Chapter 13 discharge would be more severe than if the debtors filed a Chapter 7 petition, because the business creditors would have no opportunity to seek to have their debts excepted from discharge under § 523.[6] On these facts, the harm visited upon the adversely affected class far outweigh any legitimate benefit to be gained by the debtors, thus providing another reason for denying confirmation.

The result we reach here is consistent with the holding in a prior unpublished opinion by this Court, *In re Shands*, 63 B.R. 121 (Bankr.E.D.Mich.1985). There, the debtor filed a petition for relief under Chapter 7. However, because the debtor stated her intention to reaffirm several debts, and her current husband assumed payments on several other obligations, the result was that the only significant creditor not being paid was the debtor's ex-husband, who was owed some $6,000 pursuant to a divorce property settlement. In an answer filed in an adversary proceeding, and in a hearing held to determine whether the case was a substantial abuse of the Bankruptcy Code, § 707(b), the debtor admitted that her primary purpose in filing a Chapter 7 petition was to discharge the debt to her ex-husband.

We dismissed the debtor's case as a substantial abuse, pursuant to § 707(b). By

---

**5.** *See also In re Hosler*, 12 B.R. 395, 396 (Bankr. S.D.Ohio 1981):

Rarely, if ever, do debtors consider all of their creditors to be on an equal footing, if not from a legal basis, at least from the basis of an emotional or moral commitment ... The Court believes, however, that the lawful classification of claims in a Chapter 13 setting involves more than just the personal prefer-

ence of a debtor—it involves a justification by the debtor based on reason and fairness, especially in the face of an objection from creditors who are not in the preferred class.

**6.** It is unlikely that any of the business debts were incurred for alimony, support or maintenance, and thus are nondischargeable under § 1328(a)(2).

filing a Chapter 7 petition, then reaffirming or otherwise paying essentially all debts except those to her ex-husband, she was effectively filing a Chapter 7 as to him and a Chapter 13 as to her other creditors. We held such discriminatory treatment to be a substantial abuse of Chapter 7 and dismissed the case. It is equally abusive to attempt to manipulate Chapter 13 to file bankruptcy against only some of a debtor's creditors. When debtors seek to take advantage of the benefits contained in the Bankruptcy Code, one of the conditions placed upon that relief—a "fresh start"—is that they must treat all their creditors fairly.

In the instant case, the debtors' plan fails to treat all similarly situated creditors equally, and thus is not proposed in good faith. Accordingly, confirmation of their plan must be denied. An order consistent with this opinion will be entered contemporaneously herewith.